Good morning. Hold on a second. Okay. Thank you. All right. May I? Good morning. My name is Jennifer Thompson. I'm appearing on behalf of the appellant, the City of Portland. If I may, may I reserve two minutes for rebuttal? Yes. As the court knows, this case involves a constitutional challenge to the City of Portland's median ordinance. For all intents and purposes, this court has already determined whether that ordinance is constitutional or not. With two differences that ultimately are not dispositive, this case is the Thayer v. Worcester case. Those differences, briefly, are that the Thayer case had a different procedural posture than this one in that it came to this action stage, and this has come to this court after a final trial on the merits. And secondly, there is this question about campaign signs. And what I submit is that ultimately that issue is entirely a red herring. And the content neutrality of this ordinance and the plaintiff's failure to make a prima facie showing of over breadth are the same, are quite clear. So in the district court's defense, it didn't have the benefit of this court's guidance when it made its decision about how to do this analysis. But after Thayer, the way that that analysis should be done is quite clear. When, as here, there is an over breadth challenge, it first is the plaintiff's obligation to make a prima facie showing that the ordinance or the statute wraps in a significant amount of conduct, more conduct than is required to get at the governmental interest that is the reason for the legislation. And in order to sort of start that analysis, this court in Thayer explained that you start with content neutrality. So let's start there. Nothing on the face of the ordinance mentions speech at all. The ordinance says, in summary, but pretty close, nobody may stand, sit, or stay in a median in the city of Portland. There's no mention of speech. Non-speech related activity was occurring on these sites prior to the adoption of the ordinance. Because I know the record shows that there was concern about panhandling and there were some protesters. Was there anything else? I'm thinking like in the Hicks case, they talk about frisbee playing and soccer playing on the different, you know, on the land. I assume that wasn't going on in the median strips when they passed the ordinance. I don't think frisbee playing was a choice. So was there any non-speech activity occurring on the median strips that caused the city to respond to it? Any non-speech? I think some, I can't answer that question. I mean, people were Isn't that important to the over-breath analysis? In other words, we've got to have a denominator and a numerator. Sure, well So in the normal case, in which an over-breath challenge to a content neutral law fails, you have a big denominator. Lots of non-speech activity, which obviously is permissible and you're worried about invalidating the statute. But here, I guess what is bothering me is, I don't see what non-speech activity we would be cutting off. All the activity that was motivating the concern for the statute seemed to have been speech related, because that's the only people who would bother to go in front of, on a median strip to hang out. They want to convey their message to the cars that are passing. I think that's right. Well, doesn't that make this very different than the, that's very helpful I would think to the plaintiffs, right? Because that shows that we've got a lot of speech related activity that might be being cut off. It might be that some of it, it's permissible to cut off. But when you just compare how much speech activity is substantially affected, lots would be. Well, the issue, the safety concern that the city was getting at was that medians are inherently dangerous. So it doesn't matter, it didn't matter to the city whether you were on a median speaking or whether you were on a median picnicking. It's dangerous because they're located within the middle No matter how big the median is? Yes, although there, I mean it's a question of degree. Even when they put a bench on the median? Well, there's, I think there's one park that is alleged to have a, that does have a bench, but that is sort of, the testimony at the trial was that that median in terms of enforcement is accepted because it is essentially dedicated as a public space with a bench in it. So it's not one of the traffic calming devices that the rest of the medians are intended to be. And the Franklin Street median, which is quite wide admittedly, there's also testimony in the record that demonstrates quite clearly that despite its breadth, that is one of the more dangerous medians in the city because it's in between four fast moving lanes of traffic. The public services department has gone through a number of different efforts over the years to try and keep people from using that median to cross those lanes of traffic. And so the evidence that was before the council and that was in front of the judge demonstrates that the city here made a determination that this was a public safety hazard, that medians are inherently dangerous and it wants to keep people out of them. And so when doing the over breadth analysis, you look at the government interest and whether, you know, there is that tight nexus here. And if the, if the government interest is legitimate, which I submit the case law supports that termination and requires some amount of deference to that legislative decision, if that decision by the council that this is a safety, a safety concern is, is to be respected, then that concern is standing in the middle of the road is dangerous. We want to, that's the question that troubles me. If you're standing in the median, not in the road with a sign saying, help me, or I don't like whatever, is the concern that that's going to in a fast moving roadway distract drivers or, or what? There's a difference, however, it seems to me that if I'm standing in the traveled way, trying to stop cars to the stat, the ordinance doesn't seem to separate out and you do seem to have ordinances which take care of the person who's standing in the traveled way. We do. The first thing I'll note is that the court in Thayer, this court in Thayer was persuaded by the evidence that that city brought, demonstrating that it is in fact, medians are dangerous in and of themselves. Well, but in Thayer, there was one distinction between this and Thayer you didn't mention, which is in Thayer, the ordinance required a warning first about danger before you would be in violation of the ordinance for being in the median. Okay. There's no warning requirement here. This is just a flat out ban, regardless of whether in a particular median, there is a danger where there isn't. Well, I would, I don't read Thayer to say that, that it is saved because there is a limit as to whether someone is or is not in danger. I think it says that you're in violation and subject to penalty if you refuse to move after being asked, but I don't think that that was dispositive of the question of over breadth. And to get to Judge Stahl's question, yes, medians are dangerous. We have evidence in the record that demonstrates that signs have been frequently damaged because cars are driving over them. People have been injured and more to the point, the case law does not require that a city demonstrate that there have been a fatality or significant injury before it is justified in acting. And so again, we come back to this question of, is there a reason here to second guess the legislative decision of the city's council as to what is sufficient public safety concern to act? And under the precedent, protecting pedestrians, protecting people who are driving cars, making sure that the roads are safe is a significant government interest, and in fact, Judge Singel acknowledged that. He in fact assumed that it was a compelling government interest. So unless there's going to be a second guessing of that determination, which I don't think is consistent with the case law, then we have the necessary nexus because again, if the concern is keeping people out of the middle of the roads, the only way to do that is to keep people out of the middle of the roads. There is no less restrictive means to do that. And to the extent that there is, the city has done it. There is a built-in exception for using medians for their purpose, which is as traffic calming devices so that people can stand momentarily while crossing lanes of traffic for their safety and wait and get across. That's their purpose. So do we take this case, I understand you don't, as you brief it, you don't accept their as a content-based discrimination with respect to the signage, but assume you're right on that. Do we take the case on the assumption that you allow people to put signs in the median or that you don't? Well, the city doesn't dispute that we allow people to put signs in the median. You do allow people to put signs in the median, even if they're not crossing the way? Yes, if they are momentarily, the testimony at the trial was, the police would not, first of all, the ordinance doesn't address that. So the testimony at trial was, as far as enforcement goes, police do not believe that someone who is momentarily in a median to install a sign are in the median for long enough to be in violation of the ordinance because they're not standing, sitting, or standing. Even if they're not using the median to cross? Right. Okay. And so just so I understand why that is, what is the danger concern that the city has? Is it a concern, as Giselle asked, about distracting drivers, or is it a concern about people being hit by cars because they're in the median? D, all of the above. I think if... So obviously they're not that concerned about people being in the median to putting up the sign. Well... They don't have to be there because they could, they're not crossing, the only reason they're going in there is to do some First Amendment protected activity, which you're allowing. And I guess I'm trying to figure out... Well, what I would submit is that it's a question of degree. The longer you expose yourself to a harm, the risk of harm actually occurring increases exponentially. And so there has to be, if medians are to serve their purpose, there has to be some ability to sort of touch down in them for a small period of time. But the risk that is associated with that small period of time is far less than a period of time when someone's standing there for hours holding a sign or not, picnicking, whatever it might be, and you're inviting more harm from cars who will become distracted. And as this court noted in Thayer, the purpose of being in a median most times is to distract drivers, is to get their attention. And that gets right at the heart of the city's safety concern. Just last, they bring an as-applied challenge also? What are we supposed to do on that with respect to an appeal? You don't really address the as-applied challenge that they raise in the complaint. Sure. It hasn't really been addressed much at all in this litigation. I think to the extent that it makes any sense at all to look at it, given that it wasn't discussed by the district court, my understanding of the case law is that where you have plaintiffs who are essentially fall within the ambit of the conduct that is sort of at the heart of the facial challenge, yeah, then you don't get to the as-applied. So in other words, these folks are not unique from the circumstances that they're facing are not unique from the circumstances that are brought to light in the facial challenge. So to the extent that this is a content-neutral constitutionally permissible ordinance, it isn't being applied in a manner that is violating their rights. That means we have to accept your contention that no matter how big the median is, and no matter how seemingly fit it would be for protesting, based on what they presented, we have to treat that, in your view, as there's no problem with imposing the ban even in those sites. Well, that's our position. A median is dangerous. Yeah. Counsel, so there's a petition in front of the Supreme Court in Thayer. How long has this injunction been in place, roughly? Well, I think we had trial in November, I believe, and I think the part in November of 2013, and I believe that the parties agreed not to enforce the ordinance, so it hasn't been in effect for very long at all. And it hasn't been, obviously, since the district court. Before the ordinance was enacted, there wasn't enforcement either, right? There was nothing to enforce. I'm just trying to think whether it makes sense for this to be, for us to hold this in abeyance, unless and until we get some guidance from the Supreme Court. I mean, I think they're going to consider that petition relatively soon. But if they take it, does the city have a position on that? Well, I mean, I certainly understand the wisdom of waiting to see if there's going to be additional guidance on the issue. I don't particularly have an objection to that. That was my question, whether you have some strong concern, why you want us to decide more quickly. No, sir, we haven't been enforcing anything, and I think the status quo would remain, if you decided to wait. Good morning, and may it please the Court. Kevin Martin on behalf of the plaintiffs. With me I have Zachary Heiden. Your Honors, this case concerns the ability of the citizens of Portland, whether they are panhandlers or political protesters or issue advocates, to communicate with their fellow citizens in what is indisputably a traditional public forum. It was disputed before, but Judge Singal found that meetings are a traditional public forum and the city no longer contests that. As the U.S. Supreme Court just reminded us in McCullen, the government- What do you mean by the city doesn't contest it? Do they concede it affirmatively? Well, the city no longer in their brief argues that- Okay, that's what I thought you meant. As McCullen just reminded us, the government's ability to restrict speech, even in a content neutral way, in traditional public forums, such as meetings, is very limited, and its ability to restrict speech in a content-based way is almost non-existent. Therefore, you can understand why the city is now trying to run so hard away from the position that, in the construction of the ordinance, that its witnesses and its trial counsel consistently urged on Judge Singal, which is that there is an exemption in the law, and that exemption applies only to political campaign signs. Yet, Judge Singal did not commit clear error in finding that the city had adopted an authoritative construction of the law that is content-based, and this court should therefore affirm the decision below on that basis, without even reaching the issue of narrow tailoring and Why would that be? Because the normal case is that the law is discriminating against content as to all applications. This is just one little thing about signs. We could say maybe that was impermissible, but with respect to all the other activity that you're pleading, there is absolutely nothing in the record or the judge's below's decision to suggest any content-based discrimination would occur. Well, your honor, I think if you, we argued the Forsyth County case, and if you look at the city of Cincinnati case, we mainly rely on the Forsyth County case, if you look at the city of Cincinnati case, it deals with this question of exemptions, and what the effect is of an exemption that is content-based, and as the Supreme Court explained in that case, where a government has a content-based exemption, it undercuts, it could undercut the rationale for the law as a whole. Yeah, but this is a content-based exemption with respect to one obviously segregable application, which is use of signs. There is no evidence that the protesters that you talk about, or the panhandlers, that there will be any content discrimination contemplated, it's not even allowed under the statute. The most is content-based discrimination with respect to use of signs. So why would you invalidate the entire law on the basis of content-based discrimination when there's no indication it'll occur other than with respect to signs? Your honor, that may go to the as-applied challenge that we bring, but on a facial challenge, you certainly can consider conduct and discrimination, which does not involve the activities of the plaintiffs themselves. And so if the government in this case is saying, we will allow political campaign signs, but we will not allow people to plant signs that deal with, for example, the war in Afghanistan, an example that Judge Singel put to one of the city's witnesses, and that the city's witness said, yes, I think the exemption only applies to campaign signs, not that, then you have a problem, and that is a problem that can result in the law being struck down on its face. Can be or must be? Well, you'd have to apply all the factors for that sort of over-breath challenge, but I would say in this case, must be. Because? Because the evidence is that- I mean, what's the sense of the thing? I mean, I understand that there is, in fact, content-based discrimination, if you're right, but what is the sense of saying that the content-based discrimination with respect to signs means that the statute has to be invalidated as to all its other applications, the overwhelming majority of which have nothing to do with, quote, planting signs? Your Honor, I think the sense in that is that the law should probably be sent back down to the city council to allow the city council to decide whether they want to have an ordinance which doesn't allow any signs, which the city sometimes argues was the intent, or, as the city now argues, would like to have an exemption which applies to all signs, not only political campaign signs. That's not a decision which should be made by this Court on appeal, given the record of trial, which was consistently a record establishing a content-based exemption in the law, not a broader exemption. I would like to address, simply briefly, and I know that the Court may be eager to get to the fair question, this notion of whether a law can be struck down based on an authoritative construction or only can be saved based on an authoritative construction. We addressed this in our brief, but very briefly, I would urge the Court to look at Part 2B of the U.S. Supreme Court's decision in Forsyth County. There, the U.S. Supreme Court is trying to decide whether the Forsyth County Ordinance is content-based or not. It does not decide that question on the face of the Forsyth County Ordinance, and, in fact, the U.S. Supreme Court distinguishes its earlier decision in Cox v. New Hampshire, which Forsyth County and the U.S. Supreme Court seem to agree involved very similar language on the face of the ordinance, on the basis that Forsyth County had adopted a very different construction of the law, a construction that was content-based, and it was based on that construction of the law, not the face of the law itself that the U.S. Supreme Court found the Forsyth County Ordinance to be content-based and went on to strike it down when it was faced for failure to satisfy strict scrutiny. On the Thayer question, obviously it's an important issue to answer. Judge Stahl was correct. It's being conferenced today. Based on the U.S. Supreme Court's practices, I wouldn't expect there to be an actual decision today on whether to grant or deny that. Usually they conference it at least once before deciding to grant, but we should know on Monday. There are many differences between this case and the Thayer case. First and foremost, Thayer did not involve an authoritative construction of the law which put in place a content-based discrimination among types of speech. So if Your Honors agree with Judge Singel that there is a content-based element to this ordinance based on the city's authoritative construction, already Thayer does not apply. In addition, as my sister noted, Thayer was not decided based on a trial record, and here we do have a trial record concerning the safety risks of being in a median for purposes of expressive conduct, and that trial record, Your Honors, is pretty clear. Medians are not all deathtraps. Your Honors noted some of the more expansive medians in the city of Portland, and we have testimony, which we did not have when the Thayer case went up on the PI, from Director Babinski. He is the city's witness who is the head of the Department of Public Service responsible for maintaining medians. He was put on by the city to testify about the characteristics and uses of the medians in the city. What he testified was that some of the medians in the city basically qualify as island refuges, and I asked him at trial, do those island refuges become any more dangerous? The longer one stands there, and his answer was, well, barring a blizzard rolling in or visibility conditions declining, for example, because of fog, no, they don't. They don't become any more dangerous, and so based on his testimony and really based on the absence of any record of accidents over the last five years, or now the more than a year that the Portland Ordinance has been joined, there's simply no practical demonstration that standing on any of these medians for purposes of any expressive conduct is a risk. I'm just curious, what's your position about people who move from the median, I have a sign saying, I'm homeless, I'm clean, and I need money, and then you step into the traveled way to try to collect money from the driver's side, what's your position on that? Was the statute of ordinances also intended to reach that issue as well? Well, Your Honor, I guess here's what I would say. When it comes to narrow tailoring, the government has to show that there are not alternate ordinances which would allow it to address that kind of activity without also sweeping in, for example, speech by protesters or by issue advocates, and in fact, if you look at the case law, many cases involve ordinances which deal only with either solicitation that involves stepping into the travel lane or sometimes solicitation on the median itself, but you find few examples of governments which have said, we are simply eliminating all speech of all kinds on the median. We can see that if a government, and we would suggest, especially if you look at McCullen and the analytical framework in McCullen, that if the government wants to address risks of people stepping out into the travel lane to collect a donation, then it can enforce existing laws such as the obstruction of traffic law. We asked the police chief if the government actually made a concerted effort to enforce those generic laws in the handful of medians in the city where there's a problem where the government perceives a problem with panhandling, and the police chief admitted that they did not make a concerted effort to enforce generic laws, even though in the case of problematic panhandling on sidewalks, the government did make such a targeted effort to enforce existing laws in those locations where there are issues. Under McCullen, that should be fatal to the city's narrow tailoring argument. On the issue of Thayer, I would note, too, that in Thayer, this court never actually applied narrow tailoring. In Thayer, this court first looked at substantial overbreath and set substantial overbreath up as a hurdle plaintiffs must overcome in challenging a law, even where the law is not narrowly tailored. But I had thought that an overbreath challenge enables you to invalidate the statute facially, notwithstanding that all of its applications are not invalid, right? Well, not exactly, Your Honor. There are two kinds of, and the language is loose, admittedly, in the Supreme Court's decisions, but there are two kinds of facial challenges. No, but I'm talking about an overbreath challenge. The advantage of an overbreath challenge is that you get to invalidate it facially, even though all of the applications are not invalid. The advantage of an overbreath challenge, Judge Barron, is that you can invalidate a statute on its face, even if it's applied to you, it would be constitutional. You can still strike a law down on its face if you show that the law, and this is exactly what happened in the Citizens United case, the Supreme Court said, we are striking this law down on its face, and they never said, you know, because a substantial volume of the applications would be constitutional or not, they simply said, there would be too much of a chilling effect to allow this law to remain in place. Because it was content-based there, though, right? No, well, I'm not sure, Your Honor, but you can have even an as-applied content-based challenge, so I'm not sure that that's... In McCollin, they apply narrow tailoring, and they invalidate it facially, and then they say we're not going to reach overbreath. Correct. Okay. In McCollin, are they saying every application is unconstitutional because the interest is never satisfied? Um... Or are they saying there were some constitutional applications and we don't care? You know, Your Honor, I'm not sure they delved into that. No, but don't we have to figure that out? Because that would be relevant here. If you want to make a narrow tailoring argument, not under overbreath for a facial challenge, and you want us to do that under McCollin, if we thought some of these applications were constitutional and others weren't, we'd have to figure out whether McCollin helps us there or whether we have to just go to overbreath. Your Honor, I think if you look at McCollin, and actually we cite this in our cert petition, so I could direct you there, but if you look at the U.S. Supreme Court's ordinary practice, when it strikes a law down for lack of narrow tailoring, it's not to, it is to invalidate the law in its face, and not to simply say, as applied to this particular plaintiff, because it's not narrow tailoring. Is there a content neutral law that's been invalidated in that way? Um... In other words, where does the content neutral law... Yes, Your Honor. But McCollin, for example. McCollin was a content neutral law. Yeah, but you just said it's unclear whether that's because every application was unconstitutional or only some. So what I'm looking for is a content neutral case in which the court applied only narrow tailoring, not overbreath, and invalidated it when it was clear there were some constitutional applications. Your Honor, I believe it's the Sixth Circuit explained it this way, that a law that is not narrowly tailored is by its very nature unconstitutional in all of its applications, because anyone to whom that law is applied could challenge it successfully on the basis that it's not narrowly tailored, as applied to... And so you simply strike it down on its face. Well, not a person to whom it was applied and it would be tailored. Wow. But that person couldn't win. No, because... They couldn't say, well, because someone else it wasn't tailored to. The narrow tailoring requirement at its heart is an effort to get governments to think seriously. And this is really what you see in McCollin. It's an effort to get governments to think seriously before they enact laws burdening because of the real chilling effect that these laws have. And so you want the government from the very get-go to ask, are there narrow alternatives to this law? Can we enforce generic laws? What are other governments doing? In McCollin, Massachusetts failed that test, and we would submit that Portland failed that very same test here, too. For example, one of the problems that Chief Soschuck highlighted in his presentation to the city council was the risk of drunk individuals falling off of medians and landing in traffic. Massachusetts has a law allowing police to move drunk people off of medians. New Hampshire has the... Or move them along. New Hampshire has the same law. We asked the city councilor who testified, well, why didn't you consider such a law? And he said that he didn't think it would be fair in the sense of people who were drunk. Instead, they banned speech. That is exactly the wrong approach. As the court stated, laws burdening speech have to be the last resort, not the first resort. And Portland, again, failed that test. I'm sorry. Tristal? Yeah. I'm just curious. Let's assume that a community has a preamble about safety and says that in any median 25 feet or less in width, no person can stand in that medium for purposes of... For any purposes. At least as I understand what you're saying, that would be no good also. Your Honor, I... You would have to look at the evidence in the particular case, and if you had a trial record such as we had here, I would submit that that law would fail. Thank you, Your Honor. Could you just talk about the as-applied challenge and how that... What's your as-applied challenge, and how would that operate functionally? I'm not... Well, see, Your Honor, in our complaint, each of the counts states that the law is unconstitutional as applied to plaintiffs. But what does it mean to be as-applied to the plaintiff when you're not specifying where they want to do it, or do you mean to be making as-applied challenges only as to the particular medians that are identified in the complaint? You know, look, at bottom, we would prefer to give our plaintiffs as much flexibility as they have, and so, obviously, we prefer relief, which applies to all of the medians and... So how does an as-applied... How would you go about adjudicating an as-applied challenge to one of your clients? With respect to every median in the city? So what we did, Your Honor, was we put on our three plaintiffs, and each of them testified as to the kind of speech that they engage in on medians. If a court were to allow only as-applied relief, then it would say... It could say, you know, we find that the kind of speech in which you engage and the kinds of locations in which you engage in it does not pose a risk that can be... If the plaintiffs in additional cases, those plaintiffs or other plaintiffs, wish to engage in speech that did not fit those precise parameters, I suppose that the earlier decision would be some precedent in their case, but, again, given the risk of self-censorship of the kind the U.S. Supreme Court... No, I understand you don't want to... I'm really trying to figure out what... When you say the locations, so they give a count at trial of the kind of speech they wanted to engage in, and then the kinds of locations that they say they want to be in, how framed up is that in the record? It's pretty clear. So we put on our two political protesters. They both testified as to the types of signs they hold, where they stand. We put on Ms. Pryor, who is the homeless woman... And when they say where they stand, what do they... They identify particular medians, right? They identify particular medians. And then Ms. Pryor, as well, identified particular medians where she tends to stand to seek donations and describes her conduct, which is not, for example, stepping out into the travel lanes when cars might be moving, but is usually remaining on the median, where she's close to the driver and then reaching out, and usually she can conduct her transaction without having to step into the roadway. But on those occasions where it was necessary for her to step into the roadway, she would wait for the light to change and then walk in the crosswalk and receive the donation in that manner. So if plans were limited to as applied relief, I suppose the court could say, we think that that kind of conduct cannot be forbidden by the government, consistent with the First Amendment. But again, we suggest that, given the risk... And as in Citizens United, the court should say, given the risk of the chilling effect and self-censorship, we're going to strike this down on its face. Particularly because I think if the court... And again, I don't think you even have to get there at the end of the day because you can rest on the content-based rationale. But if the court does reach this issue of narrow tailoring or intermediate scrutiny, you can find that, based on the admissions of the city's witnesses at trial, traffic medians do not pose such a risk that they can all be foreclosed from expressive conduct. Thank you, Your Honors. I have about 70 points in two minutes, so I'll try and be really brief. First, I want to submit that this court does not want to get into the business of trying to determine which median is safe and which isn't. That's what the council did. And it made a determination that medians are, in and of themselves, inherently dangerous. It knows the conditions on the ground. It understands that Franklin... The median on Franklin Street... But suppose you pass this same ordinance and apply it to all public parks.      It's not going to work. It's not going to work. It's not going to work. It's not going to work. And you gave a safety rationale. Clearly, we would inquire into whether there was actually a good safety rationale for banning speech in all parks. Of course you would. So then why is this different? Well, I'm not suggesting that you abdicate any review, but I am suggesting that there needs to be some deference and looking to the record to see whether there is evidence to support the council's decision is appropriate and necessary, and that exists here. With respect to the campaign signs, again, that is a red herring. This court in McGuire expressly held that just because you have to look at a sign or listen to something that is said to understand what is being said does not render it content neutral. If that were the case, then anti-solicitation ordinances would be content-based. That is a kind of speech. A campaign sign is a kind of speech. We're not saying only Republicans can put signs in the median for a short period of time, not Democrats or vice versa. There is no disagreement with the message. It is the kind of speech. So it is no different than an anti-solicitation ordinance, which has been held by this court and by the Supreme Court in McClellan, a similar ordinance, to be content neutral. There was a suggestion that there should be a remand to the council to rewrite the ordinance in some fashion to accept campaign signs, and putting aside this red herring business, the ordinance on its face doesn't talk about campaign signs, so there is no utility in remanding it to reenact something that doesn't need to be fixed in the first instance. And then getting to the Forsyth case, that case, although the plaintiffs rely on it and the district court did as well, that case does not stand for the proposition that you can start with a facially, constitutionally permissible ordinance that makes absolutely no mention of speech, and then reference a so-called official interpretation to invalidate it. But you can't have it both ways. You can't offer up the authoritative construction to narrow the scope of the statute by allowing signs, but then preclude us from looking into whether that narrowing construction is content-based. Why can't I? Because that's what Forsyth County and the cases suggest. It happens all the time. You want a narrowing construction, that's your authoritative construction, okay. We look at it to save it from the over-breath objection, but if it's saving it, so it may be that you're saying that the accurate understanding of the authoritative construction is that it just exempts signs without regard to content. I understand that. But if we're going to adopt the authoritative construction to narrow the scope of the statute, we have to look and see what is that authoritative construction. If we conclude it happens to be content-based, then why aren't you stuck with it? Well, I would just submit that the purposes and the analyses are distinct, and that there should be some respect given to the distinction. So to offer it to explain why this isn't wrapping in more conduct than is necessary to meet the government interest is distinct from trying to understand whether it is a content-based restriction that's aimed at discriminating against a particular message. But your point is taken. I submit that you can, but I don't think you need to in this case. Thank you.